36

03-9226-A
A_ADVERSARY
PLAINTIFF: Joyce Stuhr
DEBTOR: Floyd Hill
DEFENDANT: Floyd Hill
JUDGE: Hon. T Holman
------------------------------
FILED 12/19/03 - 01:41 PM
CLERK. U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION    sluf
RECEIPT NO: 1-3-020297    $150.00

1  Joyce Stuhr
   Plaintiff in pro per
2  P.O. Box 123
   Coarsegold, CA    93614
3  Telephone: (559) 683-5494
   Facsimile: (559) 683-8566
4

5  Plaintiff in pro per

6

7              UNITED STATES BANKRUPTCY COURT

8             EASTERN DISTRICT OF CALIFORNIA

9                  MODESTO DIVISION

10

11  In re                    )   Case No. 03-94183-A-07
                             )
12  FLOYD SHERWOOD HILL,      )
                             )   Chapter 7
13          Debtor.          )
                             )   Adv. Proc. No.
14  _____ )
                             )
15  JOYCE STUHR,             )
                             )
16          Plaintiff,       )
                             )
17  vs.                      )
                             )
18  FLOYD SHERWOOD HILL,     )
                             )
19          Defendant.       )
                             )
20  _____ )

21

## ADVERSARY PROCEEDING FOR NONDISCHARGEABILITY OF DEBT AND/OR FOR DENIAL OF DISCHARGE

22

23

24

25     Joyce Stuhr ("plaintiff"), complains of debtor, Floyd

26  Sherwood Hill ("debtor"), to seek the determination of the

27  nondischargeability of his claim or in the alternative to seek

28  the denial of the debtor's discharge based on the following

representations:

## JURISDICTIONAL ALLEGATIONS

1.   This Court has jurisdiction over this case and controversy pursuant to 28 U.S.C. § 1409, subdivision(a).   The District Court has generally referred these matters to the Bankruptcy Court for hearing pursuant to 28 U.S.C. § 157, subdivision (a), and General Orders 182 and 183 for the United States District Court for the Eastern District of California.

2.   This Court has jurisdiction over this matter pursuant to 11 U.S.C. sections 523(a)(6); 548; and 727(a)(2)(A); and 727(a)(4)(A).

3.   This is a core proceeding within the meaning of 28 U.S.C. § 157, subdivision (b)(2)(A); § 157, subdivision (b)(H); § 157, subdivision(b)(2)(I); and § 157, subdivision(b)(2)(J).

4.   This Court acquired jurisdiction when the debtor herein filed his petition for relief under Chapter 7 of the United States Bankruptcy Code on September 19, 2003.

5. Michael D. McGranahan is the duly appointed Chapter 7 Bankruptcy Trustee for this case.

## COMMON ALLEGATIONS

6.   Plaintiff repeats, realleges and incorporates the foregoing allegations, verbatim, as if fully set forth herein.

7.   Plaintiff is a creditor in this bankruptcy proceeding.

8.   On or about October 10, 2000, plaintiff approached the debtor, who was at the time a practicing attorney at law, with regards to a breach of contract matter.   Pursuant to this matter, plaintiff was to sell a parcel of land and build a residential structure to a third party, and the other party breach her

---

contract on several material aspects.  In order to represent her
in this matter, debtor demanded the sum of $20,000.00 to bring
the matter to trial.

9.  In connection with his representation of the plaintiff
in her breach of contract action, the debtor caused to have
prepared and executed a Legal Services Contract – Civil Law,
wherein the debtor promised and represented that he would provide
all reasonably necessary legal services to enforce plaintiff's
rights with respect to her breach of contract action; that he,
the debtor, would provide legal services for plaintiff's breach
of contract action **through judgment** (emphasis in original); that
he would take all reasonable steps to keep plaintiff informed of
the developments in her matter; that the debtor, as the attorney
representing plaintiff in this matter, would make those tactical
and policy decisions with respect to discovery, scheduling court
hearings, granting continuances, and engaging in discovery
proceedings or settlement conferences or negotiations with the
other side of the controversy; that debtor would render periodic
statements to plaintiff on the time expended by the debtor on
plaintiff's matter; and the debtor finally represented that all
time for which plaintiff would be billed would apply to the time
he and the other members of his staff actually spent on the
prosecution of her breach of contract matter, including the
preparation of legal documents, court appearances, consultations
with other professionals, travel time, research, correspondence,
review of correspondence, telephone calls relating to her matter,
and negotiations.  A true and correct copy of the Legal Services
Contract – Civil Law, is attached hereto as Exhibit A and is

incorporated herein by this reference.

10. Plaintiff tendered the sum of $10,000.00 to the debtor on or about October 21, 2000, and tendered a second payment for the remaining sum of $10,000.00 to the debtor on or about December 16, 2000.

11. On or about January 29, 2001, the plaintiff received a statement from the debtor showing that she had a credit of unearned attorneys fees in the amount of $14,065.00. A true and correct copy of this Statement is attached hereto as Exhibit B and is incorporated herein by this reference.

12. On or about February 28, 2001, the plaintiff also received a statement from the debtor showing that she had a credit of unearned attorneys fees in the amount of $9,430.00. A true and correct copy of this Statement is attached hereto as Exhibit C and is incorporated herein by this reference.

13. On or about May 1, 2001, the plaintiff received a statement from the debtor showing that she had a credit of unearned attorneys fees in the amount of $4,817.00. A true and correct copy of this Statement is attached hereto as Exhibit D and is incorporated herein by this reference.

14. On or about May 15, 2001, he plaintiff received another statement from the debtor showing that she had a credit of unearned attorneys fees in the amount of $5,385.00. A true and correct copy of this Statement is attached hereto as Exhibit E and is incorporated herein by this reference.

15. Following the tender of the second payment and notwithstanding a few meetings with the paralegals in debtor's staff, plaintiff received no communications or notifications from

the debtor until on or about June 26, 2001. On that day, the plaintiff received a telephone call from the debtor informing her that he had moved from his old association of attorneys and had an office of his own. On that date and place, the debtor assured the plaintiff that he would continue to prosecute her breach of contract action, and that he was falling behind on the submission of certain paperwork to the other side and requested that she meet with his paralegal to complete this paperwork. While the plaintiff was annoyed that it appeared that nothing had been done to prosecute her case, she agreed to meet with the debtor to complete the necessary paperwork. At that point, the debtor demanded that the plaintiff tender the additional sum of $10,000.00, to continue prosecuting this case.

16. Plaintiff wrote and delivered a check in that amount to the debtor and meet the next day to complete the paperwork to which the debtor was referring. Shortly after this meeting, in late July 2001 or early August 2001, plaintiff received another telephone call from the debtor informing her that he had hired, without her prior notification or advise, another attorney, Pancho Baker, to handle her case.

17. The plaintiff also received yet another statement date for May 31, 2001, from the debtor showing that she had a credit of unearned attorneys fees, after her last payment of $10,000.00, in the amount of $4,817.00. A true and correct copy of this Statement is attached hereto as Exhibit F and is incorporated herein by this reference.

18. Shortly thereafter, plaintiff received a telephone call from Mr. Baker. Plaintiff was informed from Mr. Baker that he

had not been paid any sum of money from the debtor and that he
required the sum of $10,000.00 to prosecute her breach of
contract action.  Plaintiff sought to have these fees paid from
the numerous $10,000.00-payments she had been making to the
debtor in the course of his representation of her matter.  All
her efforts at contacting the debtor were unsuccessful.  The
plaintiff left telephone messages, fax communications,
correspondence, and all had been unanswered.  Plaintiff attempted
to contact the debtor via certified mail and the letter was
returned as refused.  Plaintiff eventually paid an additional sum
of $10,000.00 to Pancho Baker to continue with the prosecution of
her case.

19.  After Mr. Baker formally started representing her,
plaintiff realized that the numerous work undertaken in the
prosecution of her case by the debtor, including, but not limited
to discovery requests for the opposing party, had not been sent
at all, and that debtor failed to undertake those actions to
which he promised to undertake.  It is on the basis of this
revelation, that debtor is informed and believe and on this basis
alleges that the information contained in the Statements she
received from the debtor, Exhibits B through F, are fabrications
and do not accurately or truthfully reflect the work the work
actually undertaken under the debtor's supervision or control
which he promised in the prosecution of her breach of contract
matter.

20.  Her breach of contract action eventually went to trial.
Because the debtor fraudulently failed to prosecute her case,
plaintiff had no information with which to present to the Court,

she eventually lost her action against the opposing party.  The
opposing party eventually was awarded judgment against the
plaintiff in the amount of $130,000.00.

## FIRST CLAIM FOR RELIEF

(Nondischargeability based on 11 U.S.C. §523(a)(2)(A))

21. Plaintiff repeats, realleges and incorporates the
foregoing allegations, verbatim, as if fully set forth herein.

22.  On or about October 10, 2000, plaintiff approached the
debtor, who was at the time a practicing attorney at law, with
regards to a breach of contract matter.  Pursuant to this matter,
plaintiff was to sell a parcel of land and build a residential
structure to a third party, and the other party breach her
contract on several material aspects.  In order to represent her
in this matter, debtor demanded the sum of $20,000.00 to bring
the matter to trial.

23.  On or about October 10, 2000, plaintiff approached the
debtor, who was at the time a practicing attorney at law, with
regards to a breach of contract matter.  Pursuant to this matter,
plaintiff was to sell a parcel of land and build a residential
structure to a third party, and the other party breach her
contract on several material aspects.  In order to represent her
in this matter, debtor demanded the sum of $20,000.00 to bring
the matter to trial.

24.  In connection with his representation of the plaintiff
in her breach of contract action, the debtor caused to have
prepared and executed a Legal Services Contract – Civil Law,
wherein the debtor promised and represented that he would provide
all reasonably necessary legal services to enforce plaintiff's

1  rights with respect to her breach of contract action; that he,

2  the debtor, would provide legal services for plaintiff's breach

3  of contract action **through judgment** (emphasis in original); that

4  he would take all reasonable steps to keep plaintiff informed of

5  the developments in her matter; that the debtor, as the attorney

6  representing plaintiff in this matter, would make those tactical

7  and policy decisions with respect to discovery, scheduling court

8  hearings, granting continuances, and engaging in discovery

9  proceedings or settlement conferences or negotiations with the

10 other side of the controversy; that debtor would render periodic

11 statements to plaintiff on the time expended by the debtor on

12 plaintiff's matter; and the debtor finally represented that all

13 time for which plaintiff would be billed would apply to the time

14 he and the other members of his staff actually spent on the

15 prosecution of her breach of contract matter, including the

16 preparation of legal documents, court appearances, consultations

17 with other professionals, travel time, research, correspondence,

18 review of correspondence, telephone calls relating to her matter,

19 and negotiations.

20      25.   These representations were false, and at the time they

21 were made the debtor knew these statements to be false.   When

22 these statements were made to the plaintiff, they were made with

23 the debtor's intent to deceive and defraud the plaintiff.

24      26.   At the time these representations were made, plaintiff

25 reasonably and justifiably relied upon these statements.   She

26 tendered the sum of $10,000.00 to the debtor on or about October

27 21, 2000, and tendered a second payment for the remaining sum of

28 $10,000.00 to the debtor on or about December 16, 2000.

27. Following the tender of the second payment and notwithstanding a few meetings with the paralegals in debtor's staff, plaintiff received no communications or notifications from the debtor until on or about June 26, 2001. On that day, the plaintiff received a telephone call from the debtor informing her that he had moved from his old association of attorneys and had an office of his own. On that date and place, the debtor assured the plaintiff that he would continue to prosecute her breach of contract action, and that he was falling behind on the submission of certain paperwork to the other side and requested that she meet with his paralegal to complete this paperwork. While the plaintiff was annoyed that it appeared that nothing had been done to prosecute her case, she agreed to meet with the debtor to complete the necessary paperwork. At that point, the debtor demanded that the plaintiff tender the additional sum of $10,000.00, to continue prosecuting this case.

28. Plaintiff wrote and delivered a check in that amount to the debtor and meet the next day to complete the paperwork to which the debtor was referring. Shortly after this meeting, in late July 2001 or early August 2001, plaintiff received another telephone call from the debtor informing her that he had hired, without her prior notification or advise, another attorney, Pancho Baker, to handle her case.

29. The plaintiff also received yet another statement date for May 31, 2001, from the debtor showing that she had a credit of unearned attorneys fees, after her last payment of $10,000.00, in the amount of $4,817.00.

30. Shortly thereafter, plaintiff received a telephone call

from Mr. Baker. Plaintiff was informed from Mr. Baker that he had not been paid any sum of money from the debtor and that he required the sum of $10,000.00 to prosecute her breach of contract action. Plaintiff sought to have these fees paid from the numerous $10,000.00-payments she had been making to the debtor in the course of his representation of her matter. All her efforts at contacting the debtor were unsuccessful. The plaintiff left telephone messages, fax communications, correspondence, and all had been unanswered. Plaintiff attempted to contact the debtor via certified mail and the letter was returned as refused. Plaintiff eventually paid an additional sum of $10,000.00 to Pancho Baker to continue with the prosecution of her case.

31. Her breach of contract action eventually went to trial. Because the debtor fraudulently failed to prosecute her case, plaintiff had no information with which to present to the Court, she eventually lost her action against the opposing party. The opposing party eventually was awarded judgment against the plaintiff in the amount of $130,000.00.

32. As a direct and proximate result of the fraudulent representations made by the debtor, the plaintiff incurred damages in the amount of $170,000.00.

33. Because these damages are directly traceable to the fraudulent representations made by the debtor that he would prosecute her case, when, in fact, he did nothing, these damages are nondischargeable under section 5239(a)(2)(A).

## SECOND CLAIM FOR RELIEF

(Nondischargeability based on 11 U.S.C. §523(a)(2)(B))

34. Plaintiff repeats, realleges and incorporates the foregoing allegations, verbatim, as if fully set forth herein.

35. Over the course of the time period in which debtor purportedly represented the plaintiff's interests in her breach of contract action with an opposing party, plaintiff sent to the plaintiff periodic statements on work purportedly done in the prosecution of her cause.

36. On or about January 29, 2001, the plaintiff received a statement from the debtor showing that she had a credit of unearned attorneys fees in the amount of $14,065.00.

37. On or about February 28, 2001, the plaintiff also received a statement from the debtor showing that she had a credit of unearned attorneys fees in the amount of $9,430.00.

38. On or about May 1, 2001, the plaintiff received a statement from the debtor showing that she had a credit of unearned attorneys fees in the amount of $4,817.00.

39. On or about May 15, 2001, he plaintiff received another statement from the debtor showing that she had a credit of unearned attorneys fees in the amount of $5,385.00.

40. The statements received by the plaintiff were respecting the debtor's financial condition.

41. The debtor caused these statements to be made with the intent to deceive the plaintiff into thinking that he had actually performed the work represented in these statements or had caused the work represented in these statements to be done.

42. The plaintiff reasonably and justifiably relied on the truth of the representations made in these statements. On the basis of the truth of the representations made in those

statements,

43. However, after Mr. Baker formally started representing her, plaintiff realized that the numerous work undertaken in the prosecution of her case by the debtor, including, but not limited to discovery requests for the opposing party, had not been sent at all, and that debtor failed to undertake those actions to which he promised to undertake. It is on the basis of this revelation, that debtor is informed and believe and on this basis alleges that the information contained in the Statements she received from the debtor, Exhibits B through F, are fabrications and do not accurately or truthfully reflect the work the work actually undertaken under the debtor's supervision or control which he promised in the prosecution of her breach of contract matter.

44. As a direct and proximate result of the fraudulent representations made by the debtor in these statements, the plaintiff incurred damages in the amount of $170,000.00.

45. Because these damages are directly traceable to the fraudulent representations made by the debtor that he would prosecute her case, when, in fact, he did nothing, these damages are nondischargeable under section 5239(a)(2)(B).

### THIRD CLAIM FOR RELIEF

(Nondischargeability based on 11 U.S.C. §523(a)(6))

46. Plaintiff repeats, realleges and incorporates the foregoing allegations, verbatim, as if fully set forth herein.

47. The actions of the debtor as described herein, were intentionally done and done with the intent to either harm the plaintiff or were done with a reckless disregard to the

plaintiff's rights.

48. As a direct and proximate result of the fraudulent representations made by the debtor in these statements, the plaintiff incurred damages in the amount of $170,000.00.

49. Because these damages are directly traceable to the intentional or reckless conduct undertaken by the plaintiff and resulted in willful and malicious injury done to plaintiff, these damages are nondischargeable under section 5239(a)(2)(6).

### FOURTH CLAIM FOR RELIEF

(Denial of Discharge based on 11 U.S.C. §727(a)(2)(A))

50. Plaintiff repeats, realleges and incorporates the foregoing allegations, verbatim, as if fully set forth herein.

51. Plaintiff has standing to bring this claim against debtor because he is one of debtor's creditors.

52. Prior to the filing of his petition for relief, debtor engaged in these actions, which included, but is not limited to the following:

a. Set up the Hill Family Trust and transferred all his real and personal property to the Trust and to defendant Janet Hill;

b. Invested all his disposable, community property earnings to the Hill Family Trust; and

c. Transferred the approximate sum of $40,000.00 to defendant Steven Hill.

53. These conveyances and transfers, and others, were made with the intent to hinder, delay, or defraud debtor's creditors, including, but not limited to, plaintiff.

54. These conveyances and transfers, and others, pertained

to and concerned property in the debtor's possession, custody or control, within one year of the filing of his petition.

55. By his actions, the debtor has perpetrated fraud upon plaintiff and by filing his petition for relief the debtor has promoted a fraud upon this Court. By virtue of the foregoing, defendant's discharge should be denied under 11 U.S.C. §727(a)(2)(A).

### FIFTH CLAIM FOR RELIEF

(Denial of Discharge pursuant to 11 U.S.C. §727(a)(4)(A))

56. Plaintiff repeats, realleges and incorporates the foregoing allegations, verbatim, as if fully set forth herein.

57. Plaintiff has standing to bring this claim against debtor because he is one of debtor's creditors.

58. When debtor filed his initial petition, he made an oath under penalty of perjury that the information contained therein was true and correct to the best of his knowledge.

59. In debtor's petition, and subsequent amendments, debtor has made false oaths and accounts, including, but not limited to the following:

a. When debtor filed his petition for relief under Chapter 7, he failed to list plaintiff as a creditor in the schedules or failed to list plaintiff in a clear and unambiguous manner and with the intent to mislead and deceive the plaintiff and this Court;

b. Debtor failed to list real property in which he holds title;

c. Debtor failed to list personal property in which he holds title;

1    d. Debtor failed to list all his creditors in Schedule

2 F of his petition, including various department store credit

3 cards, gas cards, and other creditors;

4    e. Debtor stated in Schedule I to the original

5 petition that he was a freelance paralegal and semi-retired, when

6 in reality he was, at the time the petition was filed, a

7 practicing attorney;

8    f. Debtor stated in Schedule J to the original

9 petition, and subsequent amendment, that he earns the sum of

10 $1,500.00 per month, when in reality he earns substantially more,

11 including but not limited to monthly income received from Wayne

12 Anderson Farms, in the monthly amount of $1,500.00, and from a

13 Smith-Barney Money Market Account;

14    g. In his Statement of Financial Affairs, and

15 subsequent amendment, debtor failed to list the sum of $1,500.00

16 he paid to Moon Chull Jang, as an installment on a settlement to

17 a civil lawsuit, within 90 days of the filing of his petition;

18    h. In his Statement of Financial Affairs, and

19 subsequent amendment, debtor failed to state that his Country

20 Club membership had been seized on or about September 2003,

21 within 90 days of the filing of his petition;

22    i. In his Statement of Financial Affairs, and

23 subsequent amendment, debtor failed to list transfers of property

24 gifted to other individuals;

25    j. In his Statement of Financial Affairs, and

26 subsequent amendment, debtor failed to list a mini-storage and

27 safe deposit boxes in his custody, possession or control;

28    k. In his Statement of Financial Affairs, and

subsequent amendment, debtor failed to state the addresses in which he lived within the previous three years of the filing of his petition; and

　　　　　l.　In his Statement of Financial Affairs, and subsequent amendment, debtor failed to state the name of his non-filing spouse, defendant Janet Hill, or whether he had ever been married to defendant Janet Hill within the previous seven years of the filing of his petition;

60.　These facts were known to debtor at the time defendant filed his initial petition but not included in his petition.

61.　By his actions, the debtor has perpetrated fraud upon plaintiff and by filing his petition for relief the debtor has promoted a fraud upon this Court.　By virtue of the foregoing, defendant's discharge should be denied under 11 U.S.C. §727(a)(4)(A).

### SIXTH CLAIM FOR RELIEF

(Attorneys Fees)

63.　Plaintiff repeats and realleges the allegations contained in the preceding paragraphs, verbatim, as if fully set forth herein.

64.　The Legal Services Contract — Civil Law provided that the prevailing party on any aspect of the contract would be entitled to attorneys fees.

65.　Should plaintiff prevail in her present action, plaintiff hereby makes request of her reasonable attorneys fees and costs incurred herein.

WHEREFORE, plaintiff prays for the following relief:

AS TO FIRST, SECOND, AND THIRD CLAIMS FOR RELIEF:

1.  A judicial determination that the debt owed to plaintiff in the amount of $170,000.00 be determined as NONDISCHARGEABLE;

2.  Plaintiff's attorneys fees and costs incurred in the prosecution of this matter; and

3.  For that other and further relief this Court deems proper and just.

AS TO FOURTH AND FIFTH CLAIM FOR RELIEF:

1.  A judicial determination denying the debtor's discharge and

2.  For that other and further relief this Court deems proper and just.

AS TO THE SIXTH CLAIM FOR RELIEF:

1.  Plaintiff's attorneys fees and costs incurred in the prosecution of this matter; and

2.  For that other and further relief this Court deems proper and just.

Dated: 12/18/03

_____
Joyce Stuhr

EXHIBIT

*A*

# LEGAL SERVICES CONTRACT - CIVIL LAW

This document (the "Agreement"), executed in duplicate with each party receiving an executed original, is a written fee contract that California law requires lawyers to have with their clients, pursuant to <u>California Business & Profession Code</u> Sections 6147-6148 and is intended to fulfill the requirements of that Section. The Law Office of **FLOYD S. HILL** will provide legal services to you, Chuck and Joyce Stuhr, on the terms set forth below.

    1.    **NATURE OF SERVICES.** Attorney will provide legal services to you in a matter involving **"Arata V. Stuhr" through judgment**.

    2.    **CONDITIONS.** This Agreement will not take effect, and Attorney will have no obligation to provide legal services, until you return a signed copy of this Agreement and pay the retainer called for under Paragraph Five (5).

    3.    **SCOPE OF SERVICES.** Attorney will provide all reasonably necessary legal services to enforce your rights, except for appeals from any judgment rendered by the Court or pre-judgment writs or petitions to a higher court to review an inferior court's action. Such representation will require a separate agreement for costs and attorney's fees. You also agree that the entry of the final judgment will terminate our representation of you unless additional arrangements are made. Unless you and Attorney make a different agreement in writing, this Agreement will govern all future services Attorney may perform for you.

    3.1 Attorney will take reasonable steps to keep you informed of progress and to respond to your inquiries.

    3.2 In the absence of specific directions from you, Attorney reserves the right to make those tactical and policy decisions concerning the time and place of discovery, scheduling the Court hearings, granting continuances voluntarily, and engaging in voluntary discovery or settlement negotiations. You authorize Attorney to file all pleading's and papers that Attorney believes to be reasonably necessary and to enter into negotiations towards a compromise and settlement of your case. Any settlement offer will be conveyed to you with our recommendation for your acceptance or rejection. You agree to consider seriously any recommendations for settlement that Attorney makes and not to withhold, unreasonably your consent to such settlement proposal. Attorney will not make any settlement affecting your personal rights, assets, or obligations without your prior consent.

    3.3 Attorney is authorized to associate other counsel on your behalf any time Attorney deems it necessary or desirable. Attorney will give you notice of any association. Allocation of legal fees with associated counsel will be made according to Rule 2-108 of the Rules of Professional Conduct of the State Bar of California.

    3.4 You further understand that it may, from time to time, become necessary for an associate attorney to represent you in Court. His/her hourly rates are lower than Attorney's hourly rates. To

the extent that his/her time is utilized, the overall fee will be lower. It is understood, however, that **FLOYD S. HILL** will represent you during any trial of this case, unless by the best professional judgment of the Attorney, he determines that your matter should be handled by another of the firm's attorneys. Attorney will give you thirty (30) days written notice of our intent to have another of the firm's attorneys handle your case.

4. **CLIENT'S DUTIES.** You agree to be truthful with us; to promptly provide all information and documents requested by us; to communicate with us as necessary; to return our telephone calls and respond to our letters; to keep us informed of developments; to do those things that the law requires of you as a litigant, including responding to discovery requests; to abide by this Agreement; to pay our bills on time; to keep us advised of your address, telephone number and whereabouts; and to cooperate fully in preparing and presenting your case. You also agree to make your expectations and goals as clear to us as possible.

5. **RETAINER/DEPOSIT.** You hereby agree to pay our retainer fee in the amount of **$20,000.00**. You agree that **$20,000.00** of the retainer is a payment to secure Attorney's time and services and investigation and that **$10000.00** of this retainer fee will be paid at the time of signing this agreement and the balance shall be paid in 60 days. The entire retainer fee will be credited against the overall fee in your matter when periodic billing takes place. You understand that the retainer fee will be less than, and is not intended to constitute, our total fee under Paragraph 6, as it is impossible at this time to specify the exact nature, extent, and complexities of the contemplated services. You agree to pay us the difference between the total fee under Paragraph 6 and the amount of the retainer fee paid under Paragraph 5.

5.1 Attorney reserves the right to ask reasonable additional advance payments against future attorney's fees and costs, each up to a maximum of $2,500.00, and you agree to pay them on request. Such additional deposits will be refundable. If, at the termination of services under this agreement, there have been two or more deposits and the total amount incurred by Client for attorney's fees is less than the total amount of all deposits, the difference will be refunded to Client. Once a trial date is set, Attorney will require you to pay all sums then owing to us and to deposit the attorney's fees that Attorney estimates will be incurred in preparing for and completing the trial. Those sums may exceed the maximum deposit. We also reserve the right to ask you for reasonable security for past due balances, and you agree to provide it to us on request.

6. **LEGAL FEES AND BILLING PRACTICES.** You agree that the reasonable value of Attorney's services is based upon both a current rate of $200.00 per hour for office time and $250.00 per hour for Court time for Attorney **and, in addition to the above stated hourly rates,** upon the responsibilities undertaken; the nature, extent, and complexities of your case; the intellectual effort by the Attorney which contributes to the eventual financial or other benefits obtained for you; and other value billing factors in accordance with Rule 2-107B of the Rules of Professional Conduct of the State Bar of California.

6.1 Attorney charges for his time in minimum units of tenths (1/10) of an hour. Some standard letters, pleadings, and other functions are billed as a combination of a basic fixed charge and an hourly rate.

6.2    In view of our inflationary economy, Attorney reviews and increases these hourly billing rates periodically, and the applicable hourly rates are those in effect at the time the services are performed. You will receive thirty (30) days' notice of any increase in fees, and should you not wish us to continue representation of you at the increased rate, you will have the opportunity to engage other counsel.

6.3 You have been informed and understand that it is impossible to determine in advance the nature and extent of the necessary legal services needed in your matter. You acknowledge that Attorney has made no promises about the total amount of attorney's fees to be incurred by Client under this agreement.

6.4 Time for which you are billed applies to all time we spend on your case, including, but not limited to, preparation of all legal documents for Court proceedings or marital settlement agreements; conferences; Court appearances; consultations with accountants, appraisers, actuaries, or other persons necessary to the resolution of any issues raised during the proceedings; travel; research; correspondence; review of correspondence; telephone calls relating to your matter, including calls with you, opposing counsel or court personnel; and negotiations. The legal personnel assigned to your matter will confer among themselves about the matter, as required. When they do confer, you will be billed for the attorney having the higher billing rate and two-thirds of the rate of the attorney with the lower billing rate. If more than one of our legal personnel attends a meeting, court hearing or other proceeding, you will be billed for both of the attorneys at their full billing rate. You will be charged for waiting time in court and elsewhere. You agree to pay transportation, meals, lodging, and all other costs of any necessary out-of-town travel by our personnel. You will also be charged the hourly rates for the time legal personnel spend traveling.

7.    **COSTS AND OTHER CHARGES.** Attorney will incur various costs and expenses in performing legal services under this Agreement. You agree to pay for those costs and expenses in addition to the attorney's fees. All necessary and reasonable costs for investigating, preparing and presenting your case, as covered by this Agreement, such as filing fees; process service fees; subpoena costs; fees fixed by law or assessed by courts and other agencies; court reporters' fees; photocopying costs; postage, express mail and messenger and other delivery charges; and long distance telephone calls, may, in our sole discretion, be advanced by us, and you shall be billed for all costs so advanced.

7.1 You are advised and understand that the Attorney will **not** advance deposition costs, accounting costs, or costs relating to expert witnesses or other professional advisors.

7.2 You authorize Attorney to engage such experts, consultants, and witnesses, and incur such additional litigation costs as Attorney deems necessary to the proper preparation or presentation of your case. However, before engaging any expert, Attorney will consult with you as to the need for such an expert. Attorney will select any expert witnesses, consultants, or investigators to be hired.

7.3 Attorney does not bill additional charges for secretarial time unless you request an expedited procedure which requires a secretary to take work out of order or work beyond normal

working hours to complete the expedited procedure. Attorney does bill for legal assistant and paralegal time. The base hourly rates for staff personnel presently range between $25.00 and $45.00. In-office photocopying costs are billed at $0.25 per page. Word processing/Computer time is billed at $45.00 per hour. Paralegal/legal assistant time is billed at $125.00 per hour.

8.     **BILLING STATEMENTS AND PAYMENTS.** Attorney will render periodic statements to you on a time expended basis and costs advanced, reserving the right to bill you an additional amount at the termination of your case based upon the results accomplished pursuant to Paragraph 6. Review your bills carefully, immediately upon receipt. One reason for billing monthly is to give you an opportunity to bring any problems promptly to our attention. In the absence of any written objection thereto, within sixty (60) days of the date of statement, Client will be deemed to have accepted and acknowledged the statements as current through the period covered by the statements.

8.1 All payments for legal services and costs are due within thirty (30) days after the billing statement is mailed from this office. It is our practice to charge a late charge at the rate of 12% per annum or the maximum rate allowable by law, whichever is less, on the unpaid balance on any sums not paid within thirty (30) days of the initial billing date. The payment of the late charge does not extend terms or deter payment of any past-due bill.

8.2 No fee is charged for discussing or explaining your bill. Please review our memo "Your Billing Rights" and contact Attorney if there is any question concerning your bill.

9.     **ATTORNEY'S LIEN.** Attorney shall have a lien for reimbursement of costs advanced and payment of attorney's fees due him from you under this Agreement on any and all of your claims and causes of action, judgment, settlement, amount due or to be paid or become due you; or property or money recovered for or received on your behalf that are the subject of his representation of you under this Agreement. **By signing this Agreement, you are consenting to such a lien.**

10.     **DISCHARGE AND WITHDRAWAL.** Provisions with respect to withdrawal or discharge of us:

10.1 You have the right to discharge Attorney for any reason at any time by written notice effective when received by Attorney.

10.2 Attorney has the right to withdraw from representation at any time as permitted under the Rules of Professional Conduct of the State Bar upon giving you reasonable written notice and, when applicable, the consent of the Court in which the action is then pending. The circumstances under which the Rules permit such withdrawal include, but are not limited to; (I) due to the Attorney's withdrawal from active law practice; (ii) in the event evidence discloses Attorney has an irreconcilable conflict of interest between you and a third party; (iii) the Client's conduct renders it unreasonably difficult for the Attorney to carry out the employment effectively, which includes, but is not limited to, your noncooperation, your refusal to follow Attorney's advice on a material matter of any fact or circumstance that would render our continuing representation unlawful or unethical,

material breach of this Agreement or your nonpayment of attorney's fees or costs as set forth in this Agreement; or (iv) the Client consents.

10.3 When Attorney's services are concluded, Client will remain obligated to pay Attorney at the agreed rates for all services provided, and to reimburse Attorney for all costs advanced, before the withdrawal.

10.4 The provisions of this Agreement, with respect to the fee arrangement, may be disclosed to the Court in connection with any application by Attorney for fees for services Attorney renders on your behalf. Attorney will also advise the Court of any amount Attorney has received on account.

10.5 Pursuant to Code of Civil Procedure Section 285.1, Attorney will withdraw as Counsel of Record after entry of Judgment of Final Order so as to protect you with respect to post-judgment/hearing service of process.

11. **RELEASE OF CLIENT'S PAPERS AND PROPERTY.** After our services are concluded, Attorney will, upon your request, deliver your file to you along with any funds or property of yours in our possession, subject to any protective order or nondisclosure agreement or attorney lien as provided for in paragraph (9.) above. Client's file and property includes, but is not limited to, correspondence, deposition transcripts, exhibits, experts' reports, legal documents, physical evidence, and other items reasonably necessary to Client's representation, whether Client has paid for them or not. It is further agreed that, upon withdrawal or discharge, Attorney will have the right to retain a copy of your file.

12. **ARBITRATION OF FEE OR OTHER DISPUTES:**

12.1 Any dispute between you and us as to the reasonable value of services under this Agreement shall be arbitrated under the provisions of the State Bar Fee Arbitration Program set forth in sections 6200-6206 of the <u>California Business and Professions Code</u> as administered by the Fresno County Bar Association and shall be submitted to and decided by the Fresno County Fee Arbitration Program.

12.2 Any dispute (other than one concerning legal fees only), including, but not limited to, disputes as to the quality of our services, breach of fiduciary duties, or any other aspect of our attorney-client relationship, will be determined by submission to binding arbitration as provided by California law, and not by a lawsuit or resort to court process except as California law provides for judicial review of arbitration proceedings. You also may have the right under California law to mandatory non-binding arbitration to take place before binding arbitration. If you are entitled to, and ask for, non-binding arbitration and you or we are unhappy with the result, it will be followed by binding arbitration. All parties to this Agreement, by entering into it, are giving up their rights to have any dispute decided in a court of law before a judge or jury and, instead, are accepting the use of arbitration.

12.3 **By signing this Agreement, you are consenting to binding arbitration of any**

**disputes.**

12.4   Client is advised that Attorney does not presently maintain errors and omissions insurance coverage that would apply to client's case.

13.   **ATTORNEY'S FEES AND COSTS IN ACTING ON AGREEMENT.**   The prevailing party in any action or proceeding to enforce any provision of this Agreement will be awarded reasonable attorney's fees and costs incurred in that action or proceeding or in efforts to negotiate the matter.

14.   **DISCLAIMER OF GUARANTEE.**   Nothing in this Agreement and nothing in Attorney's statements to you will be construed as a promise or guarantee about the outcome of your matter.   Client acknowledges that the Attorney has made no promises about the outcome and that any opinion offered by Attorney in the future will not constitute a guarantee.

15.   **NONWAIVER OF AGREEMENT.**   There is to be no change or waiver of any of the provisions of this Agreement unless the change is in writing, signed by both you and us.

16.   **ENTIRE AGREEMENT.**   This Agreement contains the entire agreement of the parties.   No other agreement, statement, or promise made on or before the effective date of this Agreement will be binding on the parties.

17.   **SEVERABILITY IN EVENT OF PARTIAL INVALIDITY.**   If any provision of this Agreement is held in whole or in part to be unenforceable for any reason, the remainder of that provision and of the entire agreement will be severable and remain in effect.

18.   **MODIFICATION BY SUBSEQUENT AGREEMENT.**   This Agreement may be modified by subsequent agreement of the parties only by an instrument in writing signed by both of them or an oral agreement to the extent that the parties carry it out.

19.   **CALIFORNIA LAW GOVERNS CONTRACT.**   Attorney has negotiated and entered into our contract in the County of Fresno, State of California.   The contract shall be interpreted according to California law.   Fresno County shall be the venue jurisdiction for any action brought relating to the validity or enforceability of this contract, including fee or other arbitration.

20.   **PLACE OF CONTRACT.**   This Agreement is entered into at Fresno, California, and it shall come into existence upon acceptance and execution by the Attorney at Fresno, California. This provision is not meant to exempt Client from liability to pay for legal services performed by Attorney pursuant to Client's request, prior to the execution and acceptance of this Agreement.

21.   **AGREEMENT BINDING ON HEIRS OR SUCCESSORS.**   You agree that this Agreement shall be binding upon your heirs or successors.

22.   **EFFECTIVE DATE.**   The effective date of this Agreement will be the date when, having been executed by Client, one copy of the Agreement is received by Attorney and Attorney

receives the initial deposit required by Paragraph 5 of this Agreement, or Attorney accepts late receipt. The date at the end of this Agreement is for reference only. Even if this Agreement does not take effect, you will be obligated to pay us the reasonable value of any services Attorney may have performed for you.

Dated: *10-11-00*

FLOYD S. HILL
Attorney-at-Law

23.    I/we have read and understood the foregoing terms and those set forth on any addendum to this Agreement and agree to them, as of the date **FLOYD S. HILL** first provides services. I/we guarantee to the Law Office of **FLOYD S. HILL** the payment of all sums due them by me/us, I/we understand and acknowledge I/we are free to ask Attorney to explain it further before the Agreement is signed. I/we further understand and acknowledge that I/we have the right to consult another attorney about any aspect of this Agreement. If more than one party signs below, we each agree to be liable, jointly and severally, for all obligations under this Agreement.

Dated: *10-11-00*

Joyce Stuhr

Chuck Stuhr

**WARNING**

**THIS IS A LEGAL, BINDING, CONTRACT BETWEEN YOU AND US. BEFORE SIGNING PLEASE READ IT CAREFULLY AND BE SURE YOU UNDERSTAND ALL OF THE CONTENTS. IF THERE IS ANYTHING YOU DO NOT UNDERSTAND, ASK ABOUT IT. DO NOT HESITATE TO HAVE THIS AGREEMENT REVIEWED BY ANOTHER ATTORNEY OF YOUR CHOICE. WE ENCOURAGE IT.**

EXHIBIT

*B*

# Statement

FLOYD S. HILL

ATTORNEY AT LAW

6535 N. PALM, STE 101
FRESNO, CA 93704
(559)222-2537

DATE

1/29/2001

TO:

Joyce Stuhr
P. O. Box 123
Coarsegold, Ca 93614

| | AMOUNT DUE | AMOUNT ENC. |
|---|---|---|
| | $-14,065.00 | |

| DATE | TRANSACTION | AMOUNT | BALANCE |
|---|---|---|---|
| 12/29/2000 | Balance forward | | -14,917.50 |
| 01/20/2001 | prepare case management statement | 312.50 | -14,605.00 |
| 01/24/2001 | case management hrg/Madera | 540.00 | -14,065.00 |

| CURRENT | 1-30 DAYS PAST DUE | 31-60 DAYS PAST DUE | 61-90 DAYS PAST DUE | OVER 90 DAYS PAST DUE | AMOUNT DUE |
|---|---|---|---|---|---|
| -14,065.00 | 0.00 | 0.00 | 0.00 | 0.00 | $-14,065.00 |

**EXHIBIT**

C

FLOYD S. HILL

ATTORNEY AT LAW
6535 N. PALM, STE 101
FRESNO, CA 93704
(559)222-2537

# Statement

DATE

2/28/2001

TO:

Joyce Stuhr
P. O. Box 123
Coarsegold, Ca 93614

| | | AMOUNT DUE | AMOUNT ENC. |
|---|---|---|---|
| | | $-9,340.00 | |

| DATE | TRANSACTION | AMOUNT | BALANCE |
|---|---|---|---|
| 12/31/2000 | Balance forward | | -14,917.50 |
| 01/20/2001 | prepare case management statement | 312.50 | -14,605.00 |
| 01/24/2001 | case management hrg/Madera | 540.00 | -14,065.00 |
| 01/31/2001 | discovery and notice of continued hearing | 2,125.00 | -11,940.00 |
| 02/13/2001 | special interrogatories, request for admissions | 2,000.00 | -9,940.00 |
| 02/26/2001 | hearing on Bill of Particulars | 600.00 | -9,340.00 |

| CURRENT | 1-30 DAYS PAST DUE | 31-60 DAYS PAST DUE | 61-90 DAYS PAST DUE | OVER 90 DAYS PAST DUE | AMOUNT DUE |
|---|---|---|---|---|---|
| -9,340.00 | 0.00 | 0.00 | 0.00 | 0.00 | $-9,340.00 |



EXHIBIT

ALL-STATE LEGAL®

# Statement

FLOYD S. HILL

ATTORNEY AT LAW

6535 N. PALM, STE 101

FRESNO, CA 93704

(559)222-2537

| DATE |
| --- |
| 5/2/2001 |

TO:

Joyce Stuhr
P. O. Box 123
Coarsegold, Ca 93614

| AMOUNT DUE | AMOUNT ENC. |
| --- | --- |
| $-4,817.00 | |

| DATE | TRANSACTION | AMOUNT | BALANCE |
| --- | --- | --- | --- |
| 01/31/2001 | Balance forward | | -11,917.00 |
| 02/13/2001 | special interrogatories, request for admissions | 2,000.00 | -9,917.00 |
| 02/22/2001 | PCW client | 100.00 | -9,817.00 |
| 02/26/2001 | hearing on Bill of Particulars | 600.00 | -9,217.00 |
| 02/26/2001 | prepare for meeting | 200.00 | -9,017.00 |
| 02/26/2001 | meeting/hearing | 400.00 | -8,617.00 |
| 03/01/2001 | discovery and special interrogatories/ this bill covers various dates together | 2,250.00 | -6,367.00 |
| 03/08/2001 | letter to opposing counsel | 125.00 | -6,242.00 |
| 03/09/2001 | court reporter fees | 25.00 | -6,217.00 |
| 03/22/2001 | court reporting fees | 25.00 | -6,192.00 |
| 04/30/2001 | preparation of responses to special interrogatories | 875.00 | -5,317.00 |
| 05/01/2001 | preparation of responses to demands for production | 500.00 | -4,817.00 |

| CURRENT | 1-30 DAYS PAST DUE | 31-60 DAYS PAST DUE | 61-90 DAYS PAST DUE | OVER 90 DAYS PAST DUE | AMOUNT DUE |
| --- | --- | --- | --- | --- | --- |
| -4,817.00 | 0.00 | 0.00 | 0.00 | 0.00 | $-4,817.00 |



ALL-STATE LEGAL®

**EXHIBIT**

_E_

**FLOYD S. HILL**
2350 W. Shaw Ave., #140
FRESNO, CA 93711

# Statement

| DATE |
|------|
| 05/15/2002 |

| TO: |
|-----|
| Charles Stuhr |

| | | AMOUNT DUE | AMOUNT ENC. |
|---|---|---|---|
| | | $-435.00 | |

| DATE | TRANSACTION | AMOUNT | BALANCE |
|------|-------------|--------|---------|
| 02/10/2001 | Balance forward | | 0.00 |
| 06/13/2001 | Sec of file from paralegal; rev entire file for pleadings, discovery, answers to Interrog, Resp to Demands, pending discovery; assignment of same to paralegal for org of file; establish "time-line" for pending discovery;  beg prep for trial | 940.00 | 940.00 |
| 06/19/2001 | Various T/C w/Atty Blea, re; pending disc; arrang for mtg for comp of discovery & econ manner for mgmt of action | 200.00 | 1,140.00 |
| 06/22/2001 | Mtg w/paralegal, assign for comp of pending discovery & arrang for mtg w/clients, etc. | 100.00 | 1,240.00 |
| 06/25/2001 | T/C w/L. Luckman, re; mat for Interrog & Prod of Docs, etc; T/C w/client, etc. | 140.00 | 1,380.00 |
| 06/26/2001 | Mtg w/Joyce Stuhr, re; ans due to Interrog; Prod of Docs; disc, re; contracts, etc. | 300.00 | 1,680.00 |
| 06/26/2001 | PMT #1288 | -10,000.00 | -8,320.00 |
| 06/27/2001 | Mtg w/L. Luckman (paralegal), re; on-going Ans to Interrog; Resp to Req for Prod of Docs; Prep of new Spec Interrog, (per Joyce;s req); rev of materials completed to date. | 240.00 | -8,080.00 |
| 06/27/2001 | Rec/rev of ltr from IRS, re; NO TX DUE! on estate. Ltr to J. Wright, (Atty) R. Price, (CPA), L. Quady & G. Leal, (CPA's) w/copy to J. Spaulding, Atty for Estate | 375.00 | -7,705.00 |
| 06/27/2001 | Mtg w/Scott Hill, re; expert; brief discussion of problems, req to furnish plans, resume; disc, re; mtg w/clients, ck on Planning Dept approvals, etc. | 375.00 | -7,330.00 |
| 06/28/2001 | Mtg in Madera w/Atty D. Blea; disc, re; on-going discovery; Agree to set depos of parties, etc. | 300.00 | -7,030.00 |
| 07/03/2001 | Rev of Special Interrogatories & Demands for Production of Documents; fwding of same to Attys Jamison & Chappel | 400.00 | -6,630.00 |
| 07/09/2001 | Work in off on discovery; T/C w/client; disc, re; disc, trial dates, etc. | 375.00 | -6,255.00 |
| 07/09/2001 | Two (2) T/C, (w/L. Luckman, re; exec of discovery; del of same; w/D. Blea, re; discovery due) | 225.00 | -6,030.00 |
| 07/10/2001 | Pd to Lois Luckman (paralegal) for comp of Prod of Docs, Interrogs, etc.; mailing of same | 345.00 | -5,685.00 |
| 07/10/2001 | Office work w/paralegal for comp of Prod of docs; Interrogs, dir for comp of other outstanding discovery for client, etc. | 300.00 | -5,385.00 |

| CURRENT | 1-30 DAYS PAST DUE | 31-60 DAYS PAST DUE | 61-90 DAYS PAST DUE | OVER 90 DAYS PAST DUE | AMOUNT DUE |
|---------|--------------------|--------------------|--------------------|--------------------|------------|
| -435.00 | 0.00 | 0.00 | 0.00 | 0.00 | $-435.00 |



**EXHIBIT**

*F*

# Statement

FLOYD S. HILL

ATTORNEY AT LAW
6535 N. PALM, STE 101
FRESNO, CA 93704
(559)222-2537

| DATE |
|---|
| 5/31/2001 |

| TO: |
|---|
| Joyce Stuhr<br>P. O. Box 123<br>Coarsegold, Ca 93614 |

| AMOUNT DUE | AMOUNT ENC. |
|---|---|
| $-4,817.00 | |

| DATE | TRANSACTION | AMOUNT | BALANCE |
|---|---|---|---|
| 03/22/2001 | court reporting fees | 25.00 | -6,192.00 |
| 04/30/2001 | preparation of responses to special interrogatories | 875.00 | -5,317.00 |
| 05/01/2001 | preparation of responses to demands for production | 500.00 | -4,817.00 |

| CURRENT | 1-30 DAYS PAST DUE | 31-60 DAYS PAST DUE | 61-90 DAYS PAST DUE | OVER 90 DAYS PAST DUE | AMOUNT DUE |
|---|---|---|---|---|---|
| -4,817.00 | 0.00 | 0.00 | 0.00 | 0.00 | $-4,817.00 |

# Statement

**FLOYD S. HILL**

ATTORNEY AT LAW
6535 N. PALM, STE 101
FRESNO, CA 93704
(559)222-2537

| DATE |
| --- |
| 5/31/2001 |

TO:

Joyce Stuhr
P. O. Box 123
Coarsegold, Ca 93614

| AMOUNT DUE | AMOUNT ENC. |
| --- | --- |
| $-4,817.00 | |

| DATE | TRANSACTION | AMOUNT | BALANCE |
| --- | --- | --- | --- |
| 05/31/2000 | Balance forward | | 0.00 |
| 10/13/2000 | review pleadings with paralegal | 140.00 | 140.00 |
| 10/13/2000 | set up file and review file for Answer to complaint | 225.00 | 365.00 |
| 10/16/2000 | PMT #6972 | -10,000.00 | -9,635.00 |
| 11/02/2000 | letter to Bonding Company and Client ref: representation *B* | 200.00 | -9,435.00 |
| 11/06/2000 | PARALEGAL LABOR | 200.00 | -9,235.00 |
| 11/07/2000 | Court File Fees — *fees* | 555.00 | -8,680.00 |
| 11/07/2000 | PARALEGAL LABOR | 175.00 | -8,505.00 |
| 11/08/2000 | PARALEGAL LABOR | 1,000.00 | -7,505.00 |
| 11/08/2000 | travel to Madera for court filing | 225.00 | -7,280.00 |
| 11/13/2000 | prepare amended proof of service | 112.50 | -7,167.50 |
| 11/14/2000 | copy contract | 75.00 | -7,092.50 |
| 11/15/2000 | type letter for Madera court, prepare mailings | 75.00 | -7,017.50 |
| 11/27/2000 | PCW client twice to leave msg. | 25.00 | -6,992.50 |
| 11/28/2000 | called client, left msg re: cleaner copy of constrction contract | 12.50 | -6,980.00 |
| 12/04/2000 | prepare letter, envelope, make copy of front cover of contract, mail to Jamison, organize file/folder, prepare proof of service | 175.00 | -6,805.00 |
| 12/05/2000 | prepare letter, make copies, revise proof of service, amil to Madera court | 100.00 | -6,705.00 |
| 12/08/2000 | prepare default to cross complaint | 37.50 | -6,667.50 |
| 12/19/2000 | motion to strike bill of Particulars | 1,375.00 | -5,292.50 |
| 12/19/2000 | PMT #7008 | -10,000.00 | -15,292.50 |
| 12/20/2000 | editing answer and cross-complaint | 375.00 | -14,917.50 |
| 01/20/2001 | prepare case management statement | 312.50 | -14,605.00 |
| 01/24/2001 | case management hrg/Madera — *SA* | 540.00 | -14,065.00 |
| 01/27/2001 | mADERA COURT FILING FEES | 23.00 | -14,042.00 |
| 01/31/2001 | discovery and notice of continued hearing | 2,125.00 | -11,917.00 |
| 02/13/2001 | special interrogatories, request for admissions | 2,000.00 | -9,917.00 |
| 02/22/2001 | PCW client | 100.00 | -9,817.00 |
| 02/26/2001 | hearing on Bill of Particulars | 600.00 | -9,217.00 |
| 02/26/2001 | prepare for meeting — *SA* | 200.00 | -9,017.00 |
| 02/26/2001 | meeting/hearing — *St* | 400.00 | -8,617.00 |
| 03/01/2001 | discovery and special interrogatoric/ this bill covers various dates together | 2,250.00 | -6,367.00 |
| 03/08/2001 | letter to opposing counsel | 125.00 | -6,242.00 |
| 03/09/2001 | court reporter fees | 25.00 | -6,217.00 |

| CURRENT | 1-30 DAYS PAST DUE | 31-60 DAYS PAST DUE | 61-90 DAYS PAST DUE | OVER 90 DAYS PAST DUE | AMOUNT DUE |
| --- | --- | --- | --- | --- | --- |
| -4,817.00 | 0.00 | 0.00 | 0.00 | 0.00 | $-4,817.00 |